## T. C. CORY AND C. H. KIMBALL v. CHARLES WIRTH.

1. PRESUMPTION; *Finding, When Upheld.* Where a case is tried by the court without a jury, upon parol evidence, and the court finds generally in favor of the plaintiff and against the defendants, it will be presumed that the court found all the facts in favor of the plaintiff and against the defendants, so far as there is sufficient evidence to prove such facts, although such evidence may be contradicted by other evidence in the case; and in such case the finding will be upheld by the supreme court.

2. SECURITY; *Assignment; Agency.* Where, pending negotiations between W. and D. for the purchase of furniture by D. from W. for $60, W. demands security for the payment of said $60, and in pursuance of such demand the following instrument in writing is executed and delivered to W. as such security, to wit:

"PARSONS, September 30, 1874.

"Whereas, the undersigned C. & K. have in their possession for collection, a note for $125, given by G. & S., now it is understood and agreed by all the parties, that when said note is collected, $60 out of the proceeds shall be paid to W.

(Signed) C. & K. and D."

And W. then lets D. have said furniture; and said note is still left for collection with C. & K., who are attorneys and counselors at law, their instructions having been when they first received it, to sue on it unless it was immediately paid, and these instructions are not revoked; and after said instrument in writing is executed, C. & K. make no effort to collect said note, except, that some time afterward they return the note to D., and one of them is present when the note is paid to D.; and they never make any claim for the $60 due to W.; and D. is utterly insolvent—*held*, that $60 of the amount due on said note was assigned and appropriated as collateral security for the payment of the debt due from D. to W.; and that C. & K. were made the common agents, trustees and attorneys of W. and D. to collect said note and to pay the proceeds to W. and D., according to their respective interests therein, to wit: $60 to W. and $65 and interest to D., and that they failed to do their duty toward W., and that they thereby made themselves liable for the amount which W. was to receive out of the proceeds of the note, notwithstanding they never received any part of the proceeds of said note, nor any fees or compensation for anything they did.

*Error from Labette District Court.*

WIRTH had judgment against *Cory* and *Kimball* at November Term, 1875, of the district court, and *Cory* and *Kimball* bring the case here. All necessary facts and proceedings are set forth in the opinion, *infra.*

*Cory & Kimball*, for plaintiffs in error:

The hypothesis upon which Wirth, the defendant in error, based his right to recover in the court below was, that the writing set forth in the bill of particulars constituted an equitable assignment, *pro tanto*, of a fund in the hands of plaintiffs in error to him, and that they afterward, with full knowledge of this assignment and being a party to it, suffered the entire fund to be withdrawn by the assignor, Donnovan.

The objection that we urge against this theory is, that it is inconsistent with the facts of the case, and therefore not true. There was no equitable assignment of any portion of the fund to Wirth, the writing being in effect simply an executory promise that Wirth's claim should be paid out of a particular fund. The distinction between this kind of a promise and an order to pay out of a specified fund, is clear. An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment. There must be an appropriation of the fund which confers ˙a present· right upon the assignee, although the circumstances may not admit of its immediate exercise. The assignee must have the authority to collect and the power to compel payment to himself by the fund-holder. *Christmas v. Russell,* 16 Wall. 69, 84; *Ford v. Gardner,* 15 Ind. 298; *Christmas v. Griswold,* 8 Ohio St. 559, 563; *Roger v. Hosack,* 18 Wend. 319; *Hoyt v. Story,* 3 Barb. 362; *Trist v. Child,* 21 Wall. 441; *Cowperthwaite v. Sheffield,* 3 N. Y. 243; *Pearce v. Roberts,* 27 Mo. 179; *Connelly v. Harrison,* 16 La. Ann. 41.

The writing contains no language indicating an intent to assign or transfer any right to the fund, *in præsenti,* or to give Wirth any authority to collect it, or any control over it. An assignment would have acted upon the fund itself, whoever held it. The fund was in the hands of Glasgow & Smith; evidence of it only in the hands of Cory & Kimball. Donnovan alone could have maintained an action against G. & S. to recover the amount due upon the note; Wirth

could not have done so, even if they had paid Donnovan after full notice of this claim. Tested by the principles established by the cases cited, and many others, the writing falls far short of constituting an equitable assignment of this fund.

. Again, the *fund* was not in the hands or under the control of C. & K., all that they had being simply a past-due promissory note, which at most was but evidence of a, fund in the hands of G. & S. C. & K. did not *suffer* the fund to be withdrawn by Donnovan, because they could not have prevented it. Donnovan still retained his control over the fund; he could have collected it the next hour after leaving the note with C. & K., or after giving the promise to Wirth, and payment to him would have satisfied the note, whether given up to them or not. If C. & K. had sued upon the note, the suit must have been brought in Donnovan's name. He could have discharged them at any time, dismissed the suit, compromised the claim, and they were powerless. In brief, they were simply the attorneys for Donnovan. "The stream cannot rise higher than its fountain." Even where the assignment is admitted, if it covers but a portion of the demand it does not prevent settlement with and payment to the assignor. (*Tiernan v. Jackson*, 5 Peters, 580, 597; *Walker v. Mauro*, 18 Mo. 564; *Blin v. Pierce*, 20 Vt. 25; *Harberry v. Smith*, 13 Ohio St. 495; *Jermyn v. Moffit*, 25 P. F. Smith, 399; *Chapman v. Shattuck*, 3 Gilm. 49; *Palmer v. Merrill*, 6 Cush. 282; *Robbins v. Bacon*, 3 Greenl. 346; *Smith v. Jones*, 15 Johns. 229; *Guernsey v. Carver*, 8 Wend. 492; *Stevens v. Lockwood*, 13 Ind. 644.)

It is perfectly clear from the language used in the writing, as well as the circumstances under which it was given, that C. & K. did not intend to assume an absolute liability to pay Wirth $60, but at most only a conditional liability to pay him that amount "out of the proceeds" of the note, if collected by them; if Donnovan collected it, *he* was to pay it to them "out of the proceeds." Where are "the proceeds" out of which C. & K. are to pay the judgment rendered against

them? Nothing was ever collected by or paid to them on the note. They had no control over any of the money collected by Donovan. The note was in their hands long prior to the time when this writing was given. There was no consideration of any kind passing to them, nor to Donnovan, nor from Wirth, so far as they knew.

*J. G. Parkhurst*, for defendant in error:

1. We concede that when the note against Smith and Glasgow was left with Cory & Kimball for collection, they held it as attorneys, and that their relation to Donnovan was that of attorney and client. Donnovan could pay or tender a fair amount for their services, and demand and recover the note; but when Cory & Kimball and Donnovan executed and delivered to Wirth the instrument in writing upon which he afterwards brought suit against Cory & Kimball, their relation to Donnovan changed. They then became joint promisors with him. Cory & Kimball and Donnovan jointly and severally agreed in effect that Cory & Kimball should hold the note as trustees for the benefit of Wirth to the extent of his claim; that they would use all reasonable diligence to collect the same, and that $60 of the proceeds should be paid to Wirth.

2. We think it is not material, so far as their liability is concerned, whether Cory & Kimball made the collection, or whether they made it in concert with Donnovan, for the liability of the plaintiffs in error is just the same to Wirth whether one collected it or the other.

3. The plaintiffs in error held the note for the benefit of Wirth to the extent of his claim, and the balance thereof they were holding as trustees for Donnovan. As such holders, they really had the full control of said note, and could have brought suit thereon in their own names. (*Hovey v. Sebring*, 24 Mich. 232.) They not only could have sued it in their own right, but they could have sued as trustees. (7 Cowen, 174; 12 Wend. 643; 1 Mich. 149.) See also, *Colborn v. Morton*, 3 Keyes (N. Y.), 296; *Bailey v. Inglee*,

2 Paige, 278; *L'Amoureux v. Van Rensselaer*, 1 Barb. Ch. 34; *Shaw v. Spencer*, 100 Mass. 382; *Andrews v. Andrews*, 7 Ohio St. 143.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced in a justice's court by Charles Wirth against Cory & Kimball, for the sum of $60. The action was afterward taken on appeal to the district court, where it was again tried by the court without a jury. The court found generally in favor of the plaintiff and against the defendants for the amount claimed, and rendered judgment accordingly. The defendants now bring the case to this court, and ask a reversal of the judgment below. They claim that the findings and judgment of the court below are not sustained by sufficient evidence, and are contrary to law. The only question really before us is, whether said finding is sustained by sufficient evidence. The facts of the case, as shown by the plaintiff's evidence, are substantially as follows: Wirth was about to sell some furniture to Jerry Donnovan for $60, on credit. Wirth told Donnovan that he wanted security. Donnovan then said that Cory & Kimball had a note of his for collection against Ed. Glasgow and Thomas Smith for $125, and that Wirth should be paid when the note was collected. They then went into Cory & Kimball's office, where they met Kimball, and told him that Wirth wanted to be secured for $60, and that when said note was collected Wirth was to have $60 of the proceeds thereof. Kimball then drew up the following instrument in writing, signed the same for his firm and for Donnovan, and then delivered the same to Wirth. Said instrument reads as follows:

"PARSONS, September 30, 1874.

" Whereas, the undersigned, Cory & Kimball, have in their possession for collection a note for $125, given by Ed. Glasgow and Thomas Smith, now it is understood and agreed by all the parties, that when said note is collected, $60 out of the proceeds shall be paid to Chas. Wirth.

"(Signed)    CORY & KIMBALL and JERRY DONNOVAN."

Said note was past due when this instrument was drawn up, signed and delivered. Wirth then let Donnovan have said furniture. Afterward, Donnovan himself collected the money due on said note, but concerning the details of its collection, and as to whether Cory & Kimball had any connection therewith, the evidence is contradictory. That Cory & Kimball delivered up the note to Donnovan, is admitted; but whether they delivered it up before or after its collection, is not quite clear. It was shown by the evidence on this trial that Kimball admitted and testified on the first trial of the case that he was present when Glasgow and Smith paid the money due on said note to Donnovan. It was shown that Donnovan went to Cory & Kimball's office for the note; and one witness testified on this trial that he thought, but he would not be positive, that Kimball testified on the other trial, "that he (Kimball) went over with him (Donnovan) from the office, and was present when the money was paid to Donnovan by Glasgow and Smith." Another witness introduced by the defendants themselves testified concerning Kimball's said testimony, as follows:

"I inferred from what he said that he went to Glasgow's saloon on business with Donnovan, and was there when Glasgow paid the money, but did not go for the purpose of making the collection."

There was other testimony of the same kind upon this subject. Kimball testified on the present trial that nothing was said at the time he drew up said instrument about security, or about Donnovan's and Wirth's transactions, and that he knew nothing about them. He also testified that he understood that Donnovan had collected the money due on said note before he came to their office for the note, that he did not go with Donnovan to Glasgow & Smith's saloon, and that he was not present when said note was paid. He also testified that neither he nor his firm ever received anything for drawing up or signing said written instrument; that they never received any of the proceeds of said note; and that Donnovan afterward left the country and went to Texas

without even paying them their fees. As to a part of these matters he was corroborated by Cory.

It was also shown by the evidence that when Donnovan left said note with Cory & Kimball, he left it with the order that suit should be brought on it, unless it was paid at once. And there was no evidence tending to show that Cory & Kimball ever made the slightest effort to collect said note, except to notify Glasgow & Smith prior to the drawing of said written instrument, that they had the note for collection, unless they assisted Donnovan to collect it at the time that it was paid to Donnovan. Cory & Kimball are attorneys and counselors at law.

It will be remembered that the court below found generally in favor of the plaintiff, and against the defendant. It will therefore be presumed that the court below found as follows: Said instrument in writing was drawn up and signed and delivered to Wirth for the purpose of transferring to Wirth an interest in said note of $60, as collateral security for the payment of the debt of that amount then being created by Donnovan by his purchase from Wirth of said furniture, and also for the purpose of making Cory & Kimball the common agents, trustees and attorneys of Wirth and Donnovan for the collection of the money due on said note, and for the paying the same over to Wirth and Donnovan according to their respective interests therein, to wit: $60 to Wirth, and $65 and interest to Donnovan; that, taking the written instrument, together with the accompanying circumstances, they were sufficient to accomplish the above-mentioned purposes as the parties intended; that Cory & Kimball were to collect said note immediately, but that they failed, and really made no effort to do so, except in connection with Donnovan; that before said note was collected they gave up the note to Donnovan, and then one of them went with him to the payors thereof, and was present when the note was paid to Donnovan, and made no objection thereto nor made any claim for the $60 due to Wirth.

These may not be the true facts of the case, but from the

record we must presume that the court so found them, and as there was sufficient evidence, if it had not been contradicted, to prove them, we must decide the case as though they were the true facts of the case.  Taking these facts, then, to be true, we do not think that the defendants did their duty toward Wirth.  They did not make sufficient effort to collect said note.  Perhaps, with the slightest effort on their part, they could have collected it.  They should not have given said note to Donnovan, as they did, before it was collected.  Perhaps, if they had not returned it to him, he could never have collected it.  And when it was paid, as one of their firm was present at the time, they should have claimed $60 for Wirth.  They wholly neglected Wirth's interest, however; and because of such neglect, they became liable for the amount which Wirth was to receive out of the proceeds of said note.  Donnovan seems to have been and to be utterly insolvent and pecuniarily worthless.  The plaintiffs in error seem to discuss this case as though the agreement between the parties was a mere personal executory agreement on the part of Donnovan alone with Wirth to collect said note, and then to pay $60 of the proceeds thereof to Wirth.  Such is not the case, however, under the findings of the court below.  The agreement, taking the written instrument and all the accompanying circumstances together, was an assignment and an appropriation of $60 of the fund then in the hands of Glasgow & Smith, for the purpose of paying the debt which was at the same time created from Donnovan to Wirth; and Donnovan was not to collect said $60, but Cory & Kimball alone were to do so; and Donnovan was not the only person who agreed to this arrangement, but Cory & Kimball also agreed to it.  And the facts that Wirth parted with his furniture on the strength of this arrangement, and Cory & Kimball would have been entitled to their fees for collecting and disbursing said money if they had done the same faithfully, were a sufficient consideration for their agreement.  They could have sued on the note if they could not otherwise have collected the money due thereon; and they had the right to

2—21 KAS.

use Wirth's name in any such suit, as well as that of Donno-van. The plaintiffs in error discuss this case upon what they claim to be the facts, and not upon what the court below evidently found the facts to be. We might perhaps agree with the plaintiffs in error, if the facts of the case were as they claim them to be; but as the court below found the facts against them and in favor of the defendant in error, and as there was sufficient evidence to sustain the findings of the court below, although such evidence was contradicted by other parol evidence, we must decide the case upon the facts as claimed by the defendant in error, and as found by the court below.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

BREWER, J., dissenting.